## Cobb v. Tinsley, By, Etc.

(Decided June 23, 1922.)

### Appeal from Graves Circuit Court.

1. Libel and Slander—Words Must be Given Common and Usual Meaning.—In a suit for slander, the alleged words must be given their common and usual meaning unless they be localisms or provincialisms, in which case they should be understood to mean that which they usually import in that vicinity.

2. Libel and Slander—Peremptory Instruction.—Where the alleged slanderous statements, reduced to their last analysis, mean only that the young lady about whom they were spoken was afflicted with a disease which caused her urine to pass in her sleep and the pleadings of the plaintiff admit that she was so afflicted, there is no cause of action; in such case the court should peremptorily instruct the jury to find for the defendant.

J. C. SPEIGHT for appellant.

HESTER & HESTER for appellee.

Opinion of the Court by Judge Sampson—Reversing.

This appeal is from a judgment of the Graves circuit court in favor of Rubye Tinsley, who sued by her father as next friend, against Gilbert Cobb, in which she was awarded the sum of $1,250.00 damages for slander alleged to have been uttered by Cobb. Leslie Miller, generally called Leck, was a young man about twenty years of age who kept company with and was regarded as the sweetheart of appellee, Rubye Tinsley. The young lady, as is admitted in the amended petition, was afflicted with bladder and kidney trouble to such an extent that she frequently wet the bed. The petition charges that on one occasion, shortly before the institution of the suit by Miss Tinsley, Cobb said to Leck, her sweetheart, and some other persons: "I feel sorry for Leck; some of these cold mornings he will find himself on the south side

of these logs to dry." Upon being asked what he meant he answered: "I know by experience," and rode away laughing. Later it is alleged in the petition that Cobb said of and concerning the plaintiff, "Will, you go over and ask Leck Miller whether his waterproof suit has come yet," and at the same time said: "Leck has ordered him a waterproof suit to keep Rubye (meaning the plaintiff) from wetting on him." In the petition it is averred that the words so spoken were false and slanderous and said by the defendant for the malicious purpose to and did bring her good name and fame into disrepute. It is further alleged in the same pleading that the defendant Cobb intended to convey the idea and to charge by the words spoken that Rubye Tinsley, the plaintiff, had been having sexual intercourse with said Miller and wet on him.

It is sufficiently proven that appellant Cobb uttered in substance the words alleged in the petition, but at the same time uttered other words which, in part at least, explained what he meant. The words set forth in the petition, unconnected with all the words of the conversation had between Cobb and the persons to whom it is alleged he spoke the slanderous words, are very much harsher and more inexcusable than the whole conversation when taken together. One of the Miller boys present, in testifying for the plaintiff said that when appellant Cobb rode up to where witness and his father and brother were, at a barn, Cobb said he was sorry for Leck (meaning Leslie Miller); some one asked why he was sorry for Leck, and Cobb answered that he would have to get up some of these cold mornings and get on the sunny side of the logs to dry. Then some member of the crowd wanted to know why he would have to do that, to which Cobb made no response, but talked on about something else. In the meantime one of the Miller boys said to his father, who was asking the question of Cobb, "He is talking about Leck and Rubye." Mr. Miller asked Cobb how he knew, and Cobb answered, "by experience;" then Mr. Miller said: "You have been sleeping with her then, have you?" Cobb answered: "No, no, but my children have, and you may ask them." It will thus be seen that the evidence given by the witness quite clearly explains what was meant by the whole conversation, and that Cobb did not say or impute to Rubye Tinsley unchastity or want of virtue, but was merely teasing a country boy about his sweetheart, saying in substance that after he married

Rubye he would have to get up mornings and lay on the south side of a log to dry. All of this is made plain by the pleadings as well as by the evidence of the witnesses, which show that it was generally understood that Rubye Tinsley had an affliction which caused her urine to pass while she slept. It is with great pleasure that we learn from the record that she has recovered her health and no longer suffers from this annoying malady.

It is the general rule that words must be understood to mean what they commonly import unless they have become localisms or provincialisms, and then they must be understood to mean what they generally import in that particular community where they are uttered. While Cobb acted very indiscreetly and used very ugly and unbecoming language about a dear, little neighbor girl, the words spoken by him, when reduced to their last analysis, being merely an assertion by defendant that the plaintiff wet the bed, which, being true, were not actionable, and the demurrer should have been sustained to the petition as amended.

Judgment reversed for proceedings consistent with this opinion.

Judgment reversed.